Submitted on record and briefs January 12, affirmed March 18, 1998

Andrew MILLER,
*Petitioner,*

*v.*

MULTNOMAH COUNTY
and Arnold Rochlin,
*Respondents.*

(LUBA No. 97-105; CA A100110)

956 P2d 209

Dorothy S. Cofield filed the brief for petitioner.

Sandra N. Duffy, Chief Assistant County Counsel, filed the brief for respondent Multnomah County.

Arnold Rochlin filed the brief *pro se*.

Wendie L. Kellington filed the brief *amicus curiae* for Oregon Association of Realtors. With her on the brief was Schwabe, Williamson & Wyatt, P.C.

Before Warren, Presiding Judge, and Deits, Chief Judge, and Edmonds, Judge.

DEITS, C. J.

## DEITS, C. J.

Petitioner seeks review of LUBA's decision that effectively affirmed in part and remanded in part Multnomah County's denial of petitioner's application for a conditional use permit to build a dwelling in a forest zone. We affirm.

Petitioner's application was deemed complete on January 2, 1997. A hearings officer denied the application, and petitioner appealed to the county governing body (board). On April 1, less than 120 days after the application was filed, the board announced orally after a hearing that it affirmed the hearings officer's decision. It nevertheless remanded the order to the hearings officer to amend certain findings. After the hearings officer complied, the board entered a written decision, which was dated May 8, 1997, "nunc pro tunc April 1, 1997." More than 120 days had elapsed between the filing of the application and May 8. On the merits of the application, the board applied the county's own land use regulations which, in relevant part, are more restrictive than ORS 215.750 and related state regulations, with respect to the permissibility of dwellings of the kind in question. Although the dwelling might have been allowable under the state provisions, it could not be permitted under the county's.

Petitioner contended at the May 8 hearing that the board's final decision on the application had been made on that date and, therefore, that the county had not taken "final action" on his application within the 120-day period allowed by ORS 215.428(1). Consequently, petitioner maintained that he was entitled to a refund of one-half of his application fee pursuant to ORS 215.428(7)(a).[1] The board disagreed,

---

[1] ORS 215.428 (1995) provided, in part, at the relevant time:

"(1)  Except as provided in subsections (3) and (4) of this section, the governing body of a county or its designate shall take final action on an application for a permit, limited land use decision or zone change, including resolution of all appeals under ORS 215.422, within 120 days after the application is deemed complete.

"* * * * *

"(7)  Except when an applicant requests an extension under subsection (4) of this section, if the governing body of the county or its designate does not take

taking the view that the April 1 oral announcement embodied its final action on the application. The board agreed with the county counsel's explanation to it about the finality of the April 1 action and, relatedly, the reason why the May 8 order was dated *nunc pro tunc* to April 1. The county counsel stated, as quoted in LUBA's opinion:

"It is the procedure that the County uses to make sure that a decision is made by the [county board] within the 120 days, which you did do. * * * [W]hen you make the oral decision that is the act [*sic*] the final action of the [county board] that needs to happen. * * * Then it is simply ministerial when you send the planning department off to create the final document which is what you are approving today. You are indicating that this order now comports with the decision that you made on April 1st. * * *."

The county counsel advised that, since the "decision took place in the 120 days * * * we don't have liability for returning half of the fee."

Petitioner appealed to LUBA. He argued first that the May 8 written order, rather than the April 1 announcement, constituted the county's "final action" for purposes of ORS 215.428(1), and that the county was therefore required by ORS 215.428(7)(a) to refund part of petitioner's application fees. Second, petitioner contended that the county's "backdating" of the May 8 order to April 1 was an action

---

final action on an application for a permit, limited land use decision or zone change within 120 days after the application is deemed complete:

"(a) The county shall refund to the applicant either the unexpended portion of any application fees or deposits previously paid or 50 percent of the total amount of such fees or deposits, whichever is greater. The applicant is not liable for additional governmental fees incurred subsequent to the payment of such fees or deposits. However, the applicant is responsible for the costs of providing sufficient additional information to address relevant issues identified in the consideration of the application.

"(b) The applicant may apply in the circuit court of the county where the application was filed for a writ of mandamus to compel the governing body or its designate to issue the approval. The writ shall be issued unless the governing body shows that the approval would violate a substantive provision of the county comprehensive plan or land use regulations as defined in ORS 197.015. The writ may specify conditions of approval that would otherwise be allowed by the county comprehensive plan or land use regulations."

Insofar as we are advised, petitioner did not pursue the mandamus remedy. *See State ex rel Fraley v. Deschutes Cty. Bd. of Comm.*, 151 Or App 201, 948 P2d 1249 (1997).

taken "for the purpose of avoiding the requirements of ORS 215.428"—in particular, the refund requirement of subsection (7)(a)—and, consequently, LUBA was required by ORS 197.835(10)(a)(B) to reverse the county's denial of the application. Finally, petitioner asserted that the county was required to apply the state provisions and erred by denying his application on the basis of its own more restrictive regulations. LUBA agreed with petitioner's first contention but disagreed with the others. Petitioner now seeks our review and assigns error, respectively, to LUBA's rejection of his second and third arguments.[2]

ORS 197.835(10)(a) provides:

"[LUBA] shall reverse a local government decision and order the local government to grant approval of an application for development denied by the local government if [LUBA] finds:

"(A)   Based on the evidence in the record, that the local government decision is outside the range of discretion allowed the local government under its comprehensive plan and implementing ordinances; or

"(B)   *That the local government's action was for the purpose of avoiding the requirements of ORS 215.428 or 227.178.*" (Emphasis supplied.)

The emphasized language, which is the focus of petitioner's first assignment of error here, was enacted through Oregon Laws 1995, chapter 812, section 5. The other language of the subsection preexisted the 1995 legislation and was, in substance, unchanged by it. Other provisions relating to the "120-day rule" and the mandamus procedure were also enacted through or amended by the 1995 act—most notably the amendment of ORS 215.428 and the addition of subsection (7)(a) to it. Or Laws 1995, ch 812, § 2. *See* n 1.

In rejecting petitioner's argument that it was required to reverse the county's decision pursuant to ORS

---

[2] Petitioner also contends that LUBA erred by not awarding attorney fees to him pursuant to ORS 197.835(10)(b). Given LUBA's disposition and ours, petitioner is not entitled to attorney fees under that statute. The county does not cross-petition or assign error to LUBA's holding that its final action was untimely under ORS 215.428(1) and that petitioner is entitled to a refund under ORS 215.428(7)(a).

197.835(10)(a)(B), LUBA construed the statute as applying "only when [a] petitioner demonstrates that the local government denies an application in *bad faith* in a deliberate attempt to avoid the 120-day requirement." (Emphasis in original.) LUBA concluded that the April 1 oral decision to deny the application "was made on the merits, without consideration of the 120-day rule" and that the "record indicates that the county board issued the order *nunc pro tunc* in the good faith belief that it had already complied with ORS 215.428" through the April 1 oral decision. LUBA also noted that "[n]othing in the record cited to us indicates that the county was motivated at any time to *deny* the application to avoid violating the 120-day rule or to avoid refunding fees." (Emphasis in original.)

■    Petitioner contends that LUBA misconstrued ORS 197.835(10)(a)(B) as applying "*only* when [the] local government denies an application, not on the merits, but in an attempt to avoid the 120-day rule." (Emphasis petitioner's.) Petitioner asserts that LUBA's interpretation was incorrect, first, because LUBA equated the term "action" in the statute as being synonymous with and limited to a local government's decision to deny an application. Petitioner maintains that ORS 197.835(10)(a)(B) encompasses *any* action taken to avoid *any* requirement of ORS 215.428, not just denials of applications and not just actions aimed at circumventing the 120-day requirement itself. Hence, the county's "backdating" of the order, if done to avoid the refund requirement of ORS 215.428(7)(a), could be an "action" of the kind contemplated by ORS 197.835(10)(a)(B).[3]

Petitioner also argues that LUBA was wrong in its view that a decision denying an application cannot be an action taken for the purpose of avoiding the requirements of ORS 215.428, simply because the local decision is based on

---

[3] For reasons we will explain, it is unnecessary for us to decide whether this argument is correct. We note that LUBA relied, in part, on legislative history indicating that the principal target of ORS 197.835(10)(a)(B) was "spurious denials," by which local governments might purport to make a decision shortly before the 120-day period had run without regard to the merits of the application.

Regardless of whether a final decision on the application is the *only* kind of "action" to which ORS 197.835(10(a)(B) applies, there must necessarily be a final local decision on the application in order for LUBA to have jurisdiction.

the merits of the application. Petitioner notes that there is "no exception for 'meritorious' denials in the language of ORS 197.835(10)(a)(B)."

The *amicus* make a similar but broader point. It maintains that LUBA erroneously read a "bad faith" test into the statute. It postulates that an action can be taken "for the purpose of avoiding the requirements of ORS 215.428," without "bad faith" or other improper motivation on the county's part. The *amicus* concludes that when, as LUBA found was the case here, a county's action is taken with the mistaken but "good faith" understanding that it complies with ORS 215.428, the action could nevertheless qualify as one taken for the purpose that the statute proscribes. The *amicus* states: "That the county may have hoped in good faith its action would avoid the requirements of ORS 215.428 is irrelevant" if LUBA or the reviewing courts ultimately conclude that the action did not comply with a requirement of the statute. The *amicus* appears to regard ORS 197.835(10)(a)(B) as being in the nature of a strict liability provision, under which there is no difference between *noncompliance* with ORS 215.428 and an action taken *for the purpose of avoiding* its requirements. Under the *amicus's* reading, a totally inadvertent act, such as miscalculating the amount of a refund due under ORS 215.428(7)(a), would be an action taken for the purpose of avoiding the statute, requiring LUBA to reverse a county's decision to deny an application on its merits.

■■ We do not agree with the *amicus*, and, insofar as he makes the same argument, we do not agree with petitioner, that the phrase "for the purpose of avoiding the requirements of ORS 215.428" can be read as describing anything other than an action that is taken with the intention of achieving the forbidden result. The words "for the purpose of" cannot plausibly be understood as contemplating an action that is taken under the benign but mistaken belief that it complies with the statute. The text of ORS 197.835(10)(a)(B), viewed in its context, clearly includes only county actions that are taken with the deliberate design of avoiding the requirements of ORS 215.428.

In sum, we do not agree with petitioner and the *amicus* that ORS 197.835(10)(a)(B) applies when the county

action is not one taken with the deliberate objective of avoiding the requirements of ORS 215.428. We agree with LUBA that an unintended violation of ORS 215.428 is not an action taken for the purpose of avoiding its requirements. Acting on that understanding of ORS 197.835(10)(a)(B), LUBA found that nothing that the county did here—including the entry of the *nunc pro tunc* order—was done "for the purpose" of avoiding the refund requirement or the 120-day requirement of ORS 215.428. Rather, LUBA determined that the county's May 8 actions of dating the order *nunc pro tunc* and making the final decision on the application were taken "in the good faith belief" that the April 1 oral decision had achieved full compliance with ORS 215.428.

Petitioner argues that LUBA was wrong in so finding and that, contrary to LUBA's understanding, the county counsel's statements at the board hearing indicate that the "backdating" of the order *was* intended to avoid the refund requirement. It suffices to say that this argument presents us with a battle of conflicting inferences drawn from the same evidence. Even if our review *were de novo*, as petitioner's argument appears to implicitly presuppose, we would draw the inferences that LUBA drew rather than those that petitioner does.[4]

---

[4] It is questionable whether petitioner has preserved this question for our review. ORS 197.835(10)(a) can be applicable only if LUBA "finds" that the requisite facts are present. ORS 197.835(2)(b) provides, as material here:

"In the case of disputed allegations of standing, unconstitutionality of the decision, ex parte contacts, *actions described in subsection (10)(a)(B) of this section*, or other procedural irregularities not shown in the record that, if proved, would warrant reversal or remand, [LUBA] may take evidence and make findings of fact on those allegations. * * *." (Emphasis supplied.)

In cases where an evidentiary hearing is held, pursuant to that statute, our standard of review of LUBA's findings is for support by substantial evidence in the whole record. ORS 197.850(9)(c). A party desiring an evidentiary hearing must file a motion to LUBA to hold one, pursuant to OAR 661-010-0045. Petitioner did not do so, and LUBA's "findings" were based on the local record instead of a hearing under ORS 197.835(2)(b). The procedure of that statute is specifically designed for resolving factual disputes of the kind petitioner now seeks to raise here, and petitioner did not invoke it.

Petitioner and the *amicus* argue that ORS 197.835(2)(b) and OAR 661-010-0045, viewed in light of the way that LUBA has historically applied them, are not adequate for the resolution of factual questions of the kind involved here. Insofar as that argument is meant to bear directly on the procedures followed in this case, petitioner's election not to request an evidentiary hearing by LUBA leaves it unpreserved. Insofar as the argument questions the general adequacy of the statute to achieve its intended purpose, it is for the legislature.

We hold that none of the events that might qualify as "actions," under petitioner's understanding of the term, were taken by the county for the purpose of avoiding the requirements of ORS 215.428. Accordingly, LUBA did not err in concluding that the reversal remedy of ORS 197.835(10)(a) was not available. Given the basis for our holding, it is not necessary for us to decide whether petitioner's other arguments regarding LUBA's interpretation of the statute are correct. In particular, we do not reach the question of whether the term "action" in the statute pertains *only* to a county's denial decision itself.

■    Petitioner argues in his next assignment of error that LUBA erred in upholding the county's application of its own dwelling regulations rather than the more permissive standards of state statutory and regulatory provisions. ORS 215.750(1)(c) provides:

> "In western Oregon, a governing body of a county or its designate may allow the establishment of a single-family dwelling on a lot or parcel located within a forest zone if the lot or parcel is predominantly composed of soils that are:

> "* * * * *

> "(c)   Capable of producing more than 85 cubic feet per acre per year of wood fiber if:

> "(A)   All or part of at least 11 other lots or parcels that existed on January 1, 1993, are within a 160-acre square centered on the center of the subject tract; and

> "(B)   *At least three dwellings existed on January 1, 1993, on the other lots or parcels.*" (Emphasis supplied.)

The Land Conservation and Development Commission's rule, codified at OAR 660-06-027, contains a materially similar requirement. The relevant county ordinance provisions are more restrictive, *inter alia*, in that they allow a dwelling only if five or more other dwellings are already located on lots or parcels in the defined area. The county legislation preexisted the state statute and rule.

Petitioner contends that the pertinent state statutes preclude supplemental—or at least more restrictive—local legislation. In its decision on this question, LUBA relied on its earlier decision in *Evans v. Multnomah County*, ___ Or

LUBA____ (LUBA No. 96-198, October 7, 1997), where it had rejected an argument similar to petitioner's here. In *Evans*, LUBA analogized the language of ORS 215.750 and related provisions to that of ORS 215.213(2) and ORS 215.283(2), which the Supreme Court interpreted in *Brentmar v. Jackson County*, 321 Or 481, 900 P2d 1030 (1995), as allowing counties to supplement with local regulations and restrictions. We agree with LUBA's analogy. Like ORS 215.213(2) and ORS 215.283(2), ORS 215.750 makes the allowance of the uses it describes permissive on the part of the governing body. *See*, to the same effect, ORS 215.705(1).

More to the point, however, ORS 215.750(4)(a) provides:

"A proposed dwelling under this subsection is not allowed:

"(a)  If it is prohibited by or will not comply with the requirements of an acknowledged comprehensive plan or acknowledged land use regulations or other provisions of law."

It is difficult to imagine a clearer statutory authorization of local legislation that supplements and is more restrictive than the standards of the statute itself.[5]

Petitioner argues, however, that ORS 215.720(3) reflects the legislature's intent that the criteria in the state provisions be exclusive. It provides:

"No dwelling other than those described in this section and ORS 215.740 and 215.750 may be sited on land zoned for forest use under a land use planning goal protecting forestland."

Petitioner contends:

---

[5] It is apparent that the word "subsection" in ORS 215.750(4)(a) is an accident of codification. The word should read "section," referring to ORS 215.750 in its entirety. ORS 215.750(4)(a) was enacted through Oregon Laws 1993, chapter 792, section 4(6)(d)(A). As used in that Act, the word referred to *subsection 6 of section 4*. However, as codified, subsections 6 through 8 of section 4 became ORS 215.750, and the preceding subsections were codified elsewhere. The upshot was that the word "subsection" was an accurate description in subsection 4(6) of the Act, but the pertinent part of the Act became a single section, ORS 215.750, as codified.

"The mandatory language of ORS 215.720(3) prohibits any other template dwelling than those described in the forest-land statutes. The county's template test is not described in the ORS 215.750(1)(c). * * * Thus LUBA erred by not reversing the county's denial because the county may not impose additional standards to petitioner's application."

We do not read ORS 215.720(3) as petitioner does. As we interpret it, in context with the provisions of ORS 215.705 and ORS 215.750 that we have discussed, it does not require that counties *apply only* the statutory criteria but, rather, prohibits them from allowing dwellings that do not, *at a minimum, satisfy* those criteria. To illustrate by reference to the immediate question in this case, a "dwelling * * * described in * * * ORS 215.750" includes one in an area of the prescribed kind if "[a]t *least three* dwellings existed [on the specified date] on the other lots or parcels" within the area. (Emphasis supplied.) A proposed dwelling that is to be located in an area where there are *five* other dwellings on proximate lots or parcels, as the county regulations require, *is* one that comes within the description in ORS 215.750, along with dwellings that meet the more permissive criteria of the statute itself. Accordingly, we do not read ORS 215.720(3) as disallowing the supplemental and more restrictive county regulation that we have interpreted the other relevant statutory provisions as allowing. LUBA did not err in concluding that the county properly applied its own dwelling regulations to petitioner's application and properly denied the application under those regulations.

Affirmed.