Argued and submitted August 13, reversed and remanded October 14, 1998

RECOVERY HOUSE VI,
*Petitioner,*

*v.*

CITY OF EUGENE,
*Respondent.*

(LUBA 97-021; CA A102517)

965 P2d 488

510

Michael E. Farthing argued the cause for petitioner. With him on the brief was Gleaves Swearingen Larsen Potter Scott & Smith.

Jerome Lidz argued the cause for respondent. With him on the brief was Harrang Long Gary Rudnick.

Before Armstrong, Presiding Judge, and Deits, Chief Judge, and Linder, Judge.

ARMSTRONG, P. J.

## ARMSTRONG, P. J.

Petitioner Recovery House VI seeks review of LUBA's decision affirming the City of Eugene Planning Commission's approval of a conditional use permit for petitioner's operation of a drug and alcohol addiction recovery facility in a suburban residential (RA) zone. Petitioner contends that its proposed use of the property is permitted outright in the zone and, therefore, is not subject to the conditions that the city attached to its allowance of the facility as a conditional use. We agree and reverse.[1]

There are a number of residential uses, including single-family attached dwellings, single-family detached dwellings, and duplexes, that are permitted outright in the RA zone under section 9.384 of the city code. In addition to those residential uses, a number of other uses are also permitted outright, *e.g.*, group care facilities for up to five persons and day care facilities for up to 12.

■    Section 9.015 of the code defines "dwelling, single family detached," in relevant part, as "a free-standing building designed *or* used for the occupancy of one family, with housekeeping facilities for only one family." (Emphasis added.) It is undisputed that the existing structure in which petitioner wishes to operate its facility was originally *designed* for single-family occupancy but that petitioner's plan to accommodate 16 unrelated patients at a time would not qualify as a single-family *use* of the building. Petitioner takes the position that its proposed facility qualifies as a single-family detached dwelling, because it understands the word "or" to signify that the code's definition encompasses buildings that are *either* designed *or* used for single-family occupancy. Therefore, the fact that its building was designed for a single family brings it within the definition of a single-family dwelling and makes its proposed use an outright permitted one in the zone, despite the fact that petitioner will not employ the property as a residence for a single family. Conversely, the city takes the view—as did LUBA—that a

---

[1] We remanded an earlier decision by LUBA in this proceeding in *Recovery House VI v. City of Eugene*, 150 Or App 382, 946 P2d 342 (1997). The present review arises from LUBA's decision pursuant to our remand.

building must be both designed *and* used for single-family occupancy in order to qualify as a single-family dwelling under section 9.015.[2]

Although the parties' arguments contain more subtle gradients, some of which we will later discuss, their fundamental premises may be simply summarized: petitioner understands the word "or" in the definition to have its plain, natural and ordinary disjunctive meaning and to make the words that it separates alternative ways of coming within the definition. The city, on the other hand, argues that the word "or," as used in the definition, means "and."

In rejecting an argument similar to the city's here, the Supreme Court said in *Lommasson v. School Dist. No. 1*, 201 Or 71, 79, 261 P2d 860, 267 P2d 1105 (1954):

> "Courts should exercise circumspection to avoid any effort to amend statutes. There is no justification for using 'or' as meaning 'and', unless the failure to do so would leave a statute meaningless or absurd. It is an inexcusable device of interpretation where there is no ambiguity to be resolved. Generally, the words 'and' and 'or', as used in statutes, are not interchangeable, being strictly of a conjunctive or disjunctive nature, respectively; and their ordinary meaning will be followed if it does not render the sense of the statute dubious or circumvent the legislative intent, or unless the act itself furnishes cogent proof of the legislative error."

In *McCabe v. State of Oregon*, 314 Or 605, 610-11, 841 P2d 635 (1992), the court quoted and reiterated those principles, and it concluded, over the defendant's contrary arguments,

---

[2] The city planning commission's interpretation of the code language is not entitled to deferential review by LUBA or by us. *Gage v. City of Portland*, 319 Or 308, 877 P2d 1187 (1994).

We note that the city, in its argument here, at least assumes that petitioner is correct in its implicit understanding that the word "designed" in the definition refers to a building's *original* plan and configuration. Because no argument to the contrary is made, we do not reach the question, and we imply neither agreement nor disagreement with petitioner's understanding.

We also note, to avoid confusion, that the word "use" has two different meanings, depending on the context. It sometimes refers to the actual activity that is conducted on or proposed for petitioner's property, and sometimes to types of activities and operations that are or are not permissible in an area under zoning regulations.

that "[i]n this case there is no reason to reverse meanings; 'or' in [the statute in question] means 'or.' "[3]

The city argues, and LUBA agreed, that support for the city's position may be found in *Wilbur Residents v. Douglas County,* 151 Or App 523, 950 P2d 368 (1997), *rev den* 327 Or 83 (1998), and *McCoy v. Linn County,* 90 Or App 271, 752 P2d 323 (1988). In *Wilbur Residents,* we interpreted ORS 215.416(11)(a),which allows counties to act on certain applications without a hearing if notice and an opportunity to appeal are provided "to those persons who would have had a right to notice if a hearing had been scheduled *or* who are adversely affected or aggrieved by the decision." (Emphasis added.) In *McCoy,* we considered a local ordinance under which the approval of certain developments was contingent on their being compatible with and their not adversely affecting the "liveability *or* appropriate development of abutting properties and the surrounding neighborhood." (Emphasis added.)

In both cases, we were presented with arguments that turned on the use of the "disjunctive word 'or.' " The proponent in *Wilbur Residents* asserted that, under ORS 215.416(11)(a), the county did not have to give notice to persons adversely affected by the decision if it elected instead to provide notice only to those who would have been entitled to a hearing notice if a hearing had been held. Correspondingly, the proponent in *McCoy* contended that the county could approve a proposed development upon a finding that *either* the liveability or the appropriate development criterion was satisfied, and it did not have to find that both criteria were met. We rejected the arguments in both cases. We explained in *Wilbur Residents:*

> "[T]he sense of the statute and its context compel the interpretation that its use of the disjunctive contemplates a series of things that must be satisfied *seriatim* rather than ones that may be chosen among."

---

[3] At least in cases where the courts perform the interpretive exercise themselves, as distinct from applying a deferential review methodology to a local body's interpretation, the "same rules that govern the construction of statutes apply to the construction of municipal ordinances." *Lincoln Loan Co. v. City of Portland,* 317 Or 192, 199, 855 P2d 151 (1993); *Lane County v. Heintz Const. Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).

514

151 Or App at 528.

Similarly, we said in *McCoy*:

"Petitioners are correct that the word 'or,' which separates the livability and appropriate development criteria in section 21.480.1, is a 'disjunctive' term. Petitioners are incorrect, however, in their understanding of what the ordinance treats disjunctively. It does not contemplate that a proposed development may qualify for approval if it *satisfies* either criterion; the meaning of the provision is that approval cannot be granted if either of the criteria is *not satisfied* by the proposal."

90 Or App at 276 (emphasis in original).

■ Neither *Wilbur Residents* nor *McCoy* stands for the proposition that the word "or" as used in the interpreted provisions means "and." Rather, both cases deal with what the word "or" treats disjunctively in the provisions in question there, and both hold that the word as used in those provisions separates and applies to a series of sequential—as opposed to alternative—substantive or procedural requirements or standards. Conversely, there is no basis for reading the word "or," or the words that it separates in the code provision at issue here, as signifying anything other than alternative criteria for coming within the definition. Stated another way, the word "or" as used in the definition of detached single-family dwellings means "or" in its customary "either/or" sense. It cannot plausibly be understood any other way.

■ The city further asserts that, however clear the text of the provision may be, *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), and its progeny require that the context of the provision be considered as well. The city is of course correct, but the relevant context is not helpful to it. The definitions in section 9.015 that apply to other uses that are permitted outright in the RA zone, *i.e.*, "dwelling, single family attached," and "dwelling, duplex," use the same "designed or used" formulation as does the definition that immediately concerns us. By contrast, the section's definition of "dwelling, multiple," a use that is *not* an outright permitted one in the RA zone, defines it, in relevant part, as "[a] building designed *and* used for occupancy by three or more families[.]" (Emphasis added.)

That context tends to show that the enacting body was aware of and used the word "and" as well as the word "or," presumably in keeping with different intended meanings in the respective places where the different words were used; the context also tends to show a consistent use of the word "or" in the definition of permitted uses in the RA zone, while the word "and" was used in connection with a use that is not permitted outright in that zone. The context does not support the city's view that "or" was intended to be interchangeable with "and" in the definition of detached single-family dwellings or the other definitions in section 9.015. *See PGE*, 317 Or at 611. In any event, whatever weight we might accord that context, it points in the same direction that the text does, *i.e.*, to the conclusion that, as in *McCabe*, the word "or" here means "or."

■    Most of the city's remaining arguments, and the essential basis for LUBA's agreement with the city, are to the effect that the word "or" was a "mistake in drafting," or that applying the word literally would bring about absurd or unreasonable results. The first point is easily answered. There is no evidence here, textual or otherwise, to support the city's view that the wording in the code is due to a draftsman's error. The city simply postulates that, because its planning personnel and attorneys *now* consider that the design and use prongs in the definition should have been conjunctive, those who drafted and enacted the ordinance necessarily misspoke themselves by saying the opposite. Far from there being anything beyond postulation to support the city's point, the repeated use of the phrase "designed or used" in the definitions of this and other permitted RA-zone uses would seem to belie the point. We are not at liberty to construe the code provision as meaning something other than it says on the basis of the city's speculation that it was meant to say something else.[4]

■    The "absurd result" facet of the city's argument centers on the premise in its brief that, if uses are allowable simply because the structures in which they are to take place

---

[4] Our discussion in the text takes the city's contention according to the city's terms. By doing so, we do not imply that there is much we could do about it even if there were persuasive tangible support for the city's "drafting error" hypothesis.

were *"designed* for single family use, then all kinds of uses—multi-family residential, commercial and even industrial—would be permitted outright in low-density residential zones." (Emphasis the city's.) The correctness of that premise seems to us to be far from self-evident. As a facial proposition, it would not appear that buildings designed for single-family residential use—or at least those buildings that have been correctly identified as being so designed—would often readily lend themselves to intrusive commercial or industrial uses. In this case, no such radical anomaly would result from the literal application of section 9.015 to petitioner's proposal. The proposed use differs in degree only, not in kind, from various other nonresidential uses that are permitted outright in the RA zone.

Be that as it may, like most courts, we have been sparing in our invocation of the "absurd or unreasonable results" principle out of concern that its application "entails the risk of judicial displacement of legislative policy on the basis of judicial speculation that the legislature could not have meant what it unmistakenly said." *Southwood Homeowners v. City Council of Philomath*, 106 Or App 21, 24, 806 P2d 162 (1991). More recently, we have questioned whether the "absurd results" principle retains any vitality, in the aftermath of *PGE. See Clackamas County v. Gay*, 146 Or App 706, 710-11, 934 P2d 551, *rev den* 325 Or 438 (1997); *id*. at 711-18 (Landau, J., concurring). However, even assuming the survival of the principle itself, we noted in *Gay* that it has no proper application to arguments

> "that the language of a statute leads to an 'unintended result.' It is well established that courts 'cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent.' *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976)."

*Gay*, 146 Or App at 711 n 2.

When all is said and done, the city asks us to do precisely what *Gay* and *Monaco* say that we may not do. As suggested in the preceding paragraph, there is nothing so obviously absurd or unreasonable about the code's definition, as written, that would justify our refusal to give it effect. The

city is free to amend its code if it does not reflect the city leaders' current intent, but that is an end that must be achieved through legislative rather than judicial action. *See West Hills & Island Neighbors v. Multnomah Co.*, 68 Or App 782, 787, 683 P2d 1032, *rev den* 298 Or 150 (1984).

We have reviewed the parties' other arguments and do not consider that they require discussion.

Reversed and remanded.