Argued and submitted January 5, affirmed March 4, 2015

Joseph WEST
and Tasha Bollermann,
*Petitioners,*

*v.*

MULTNOMAH COUNTY,
*Respondent.*

Land Use Board of Appeals
2014048; A158038

350 P3d 203

Charles Swindells argued the cause and filed the brief for petitioners.

Jed Tomkins argued the cause and filed the brief for respondent.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Egan, Judge.

EGAN, J.

**EGAN, J.**

In this land use case, petitioners seek review of a Land Use Board of Appeals (LUBA) order that affirmed Multnomah County's (the county) decision to deny their application for a new "template dwelling" on their property. To qualify for a permitted template dwelling, petitioners had to show, among other things, that within a 160-acre square centered on their property, five dwellings existed as of 1993 and continue to exist. The dispute in this case is whether the structure that petitioners rely on for the fifth dwelling—a dilapidated house built in 1906 that has been vacant for some time—qualifies as a "dwelling" under the county's code provision. Both the county and LUBA concluded that it did not. We review LUBA's order to determine if it is "unlawful in substance," ORS 197.850(9)(a), and, because we agree that the 1906 structure is not a dwelling that continues to exist, we affirm.

Petitioners' property is located in the West Hills Rural Plan Area of Multnomah County, is zoned Commercial Forest Use 2 (CFU-2), and is capable of producing more than 85 cubic feet per acre of wood fiber annually. As a result, petitioners' property is property on which a "template dwelling" may be permitted, provided it meets the "template test" in the Multnomah County Code (MCC or code) section 33.2240(A)(3)(c). *See* MCC § 33.2225(B) (listing types of dwellings that may be permitted in a CFU-2 zone). For petitioners' property, the template test requires that, within a 160-acre square centered on the property, at least 11 other lawfully created lots existed as of January 1, 1993, and at least five dwellings lawfully existed as of January 1, 1993, and continue to exist or have been replaced by lawful replacement dwellings.[1] MCC § 33.2240(A)(3)(c).

---

[1] MCC section 33.2240 provides, in part:

"(A) A template dwelling may be sited on a tract, subject to the following:

"* * * * *

"(3) The tract shall meet the following standards:

"* * * * *

"(c) If the tract is predominantly composed of soils which are capable of producing above 85 cf/ac/yr of Douglas Fir timber; and

"1. The lot upon which the dwelling is proposed to be sited and at least all or part of 11 other lawfully created lots existed on January 1, 1993 within a

Petitioners undisputedly showed that there were 11 qualifying lots and four qualifying dwellings surrounding their property. However, the county hearings officer found that the fifth structure on which petitioners relied did not qualify as a "dwelling" that "continue[s] to exist" under the code. LUBA's order described that structure (the 1906 structure) as follows:

> "There is no dispute that the 1906 structure is in a 'state of significant disrepair.' The hearings officer's description of the 1906 structure is set out below:
>
>> "'* * * This 1906 structure is not presently occupied— it has been boarded up. Moreover, the building is not structurally intact—one half of the structure has split from the other, a portion of the roof is covered in plastic and another roof area is severely degraded with missing shingles, the windows are without glass and the siding has holes in it. In addition, other than Portland Maps data offered by the applicant that lists this building as a dwelling with a bathroom, the record contains no other evidence that the building has indoor plumbing, cooking facilities, or sanitation or that it is or has been recently inhabited. Lastly, County Assessment and Taxation records indicate the current value of the 1906 building is less than $2,500 and shows a range of values from $1,000 to $2,410 between the years of 1996 to 2013. These values indicate that the structure was in a similar, deteriorated and vacant condition for an extended period of time. * * *'"

---

160-acre square when centered on the center of the subject tract parallel and perpendicular to section lines; and

"2. At least five dwellings lawfully existed on January 1, 1993 within the 160-acre square and those dwellings either continue to exist or have been replaced by lawful replacement dwellings."

In 1993, the legislature authorized forest template dwellings in forest zones in western Oregon. Under that statute, the template test for property like petitioners' is 11 lots and three dwellings within the 160-acre square that existed as of January 1, 1993. ORS 215.750(1)(c). The Land Conservation and Development Commission (LCDC) promulgated an administrative rule that sets out the same template test, but also requires that the dwellings "continue to exist." OAR 660-006-0027(3)(c). Neither the statute nor the LCDC rule provides a definition of "dwelling." The county's code is more restrictive than both the statute and the LCDC rule because it requires five dwellings that "continue to exist." We have previously concluded that the county's more restrictive code provision is valid. *Miller v. Multnomah County*, 153 Or App 30, 40, 956 P2d 209 (1998). In this case, we are called on to interpret the meaning of "dwelling" only as that term is used in MCC section 33.2240(A).

"Our review of photographs in the record of the 1906 structure confirm the hearings officer's conclusion that the 1906 structure is a severely dilapidated, abandoned and boarded-up structure. Those photographs support the hearings officer's finding that the 1906 dwelling has not been occupied as a residence for a number of years. The tax records support a conclusion that the structure has been in a dilapidated condition since 1996, or the last 18 years."

(Record citations omitted; omissions in LUBA's order.) Petitioners did not dispute the hearings officer's description of the 1906 structure. Rather, they argued that it qualifies as a dwelling in that condition under the applicable definitions in the code. LUBA disagreed and affirmed both of the hearings officer's alternative reasons why the 1906 structure was not a dwelling that continues to exist: (1) the code definition of "dwelling unit" requires a dwelling to provide, in the present tense, complete living facilities, which the 1906 structure does not and (2) at best, the 1906 structure was a nonconforming dwelling use that has been abandoned and cannot be resumed.

On review, petitioners assign error to both lines of reasoning affirmed by LUBA. We address only the first one—that the 1906 structure is not a dwelling that continues to exist—because we find it dispositive. Before turning to the parties' arguments, we first set out several definitions contained in the code that inform those arguments and our analysis. The code does not provide a definition for the stand-alone word "dwelling." It does, however, define "Dwelling (Duplex or Two-Unit)," "Dwelling (Single Family Detached)," and "Dwelling (Multi-Plex Structure)." Those definitions provide:

"Dwelling (Duplex or Two-Unit)—A detached building designed for two dwelling units, whether in separate or single ownership.

"Dwelling (Single Family Detached)—A detached building designed for one dwelling unit including Mobile Homes under the provisions as specified within the district.

"Dwelling (Multi-Plex Structure)—See Multi-Plex Dwelling Structure.

"* * * * *

> "Multi-Plex Dwelling Structure—A row house or town house apartment structure."

MCC § 33.0005.

> "Apartment—Any building or portion thereof used for or containing three or more dwelling units."

*Id.* Thus, under the code, a dwelling is a "building" that is designed for, or for a multi-plex containing, the specified number of "dwelling units" for the applicable definition. Those terms are, in turn, defined as follows:

> "Building—Any structure used or intended for supporting or sheltering any use or occupancy.
>
> "* * * *
>
> "Dwelling Unit—A single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation."

*Id.* Because the definition of building includes the term "structure," we also set out that definition:

> "Structure—That which is built or constructed. An edifice or building of any kind, or any piece of work artificially built up or composed of parts joined together in some definite manner."

*Id.* The parties agree that the 1906 structure is a "structure" under the code, but disagree whether it is also a "building" and a "dwelling."

Petitioners contend that the 1906 structure is both a "structure" and a "building" under the code. From there, petitioners argue that a "Dwelling (Single Family Detached)" is only required to be a building that is *designed* for one-dwelling unit. Thus, petitioners conclude, the 1906 structure must be a dwelling because it was planned, or intended, to be constructed as a single-family dwelling when it was built in 1906. Petitioners argue that LUBA erred in affirming the county's requirement of habitability for the 1906 structure because the code definition for single-family dwelling requires that it only be *designed* for a single-dwelling unit, not that it *currently* provide all the attributes of a dwelling unit. In making that argument, petitioners point out

that "dwelling" is necessarily a broad term that describes a building that may not have features of habitability because the code also defines the narrower subsets of "habitable dwellings" and "replacement dwellings."[2] Petitioners assert that the "continue to exist" provision in the template test only means that the structure must physically continue to exist in some manner.

The county responds that the 1906 structure is neither a building nor a dwelling. The county argues that the definition of building uses the present tense—used, as in currently used, or intended, as in currently intended, for dwelling use—as opposed to the definition for structure, which is anything artificially constructed. It is the current capability of use, asserts the county, that qualifies a structure as a building. The county thus concludes that the 1906 structure is not a building (and thus also not a dwelling) because it is not currently being used as a dwelling and, given its state of significant disrepair, cannot be currently intended for such use. The county similarly argues that the definition of "dwelling unit" uses the present tense— *providing* complete living facilities—which means that, to be a dwelling, a building must currently contain those attributes. The county further responds that the use of the word "designed" only qualifies the number of dwelling units in those definitions as a means to distinguish types of dwellings for regulation; it does not qualify the term "dwelling unit" itself and thus, to be a dwelling, the building must currently provide the attributes of a dwelling unit.

We agree with the county that the 1906 structure is not a dwelling that continues to exist under the template

---

[2] "Habitable Dwelling" is defined as

"An existing dwelling that:

　"(a) Has intact exterior walls and roof structure;

　"(b) Has indoor plumbing consisting of a kitchen sink, toilet and bathing facilities connected to a sanitary waste disposal system;

　"(c) Has interior wiring for interior lights;

　"(d) Has a heating system; and

　"(e) Was lawfully established."

MCC § 33.0005. Under the code, existing habitable dwellings located in CFU-2 zones can be replaced with a "replacement dwelling" as an allowed use. MCC § 33.2220(D).

test. The code defines dwelling by distinguishing among three types of dwellings—single-family detached, two-unit, and multi-plex—and which type applies depends on the number of dwelling units the building contains or is designed for. *See* MCC § 33.0005 (definitions). The overarching word "dwelling" is thus just a reference to any dwelling regardless of the number of dwelling units it is designed for; it is not a term that has a different meaning than those three types of defined dwellings. Here, the 1906 structure, if a dwelling at all, could only be a single-family detached dwelling, so we focus on that definition, as did the parties.

After inserting the definition of dwelling unit, a single-family detached dwelling is defined under the code as a "detached building designed for one" "single unit providing complete, independent living facilities for one or more persons, including permanent provisions for living, sleeping, eating, cooking and sanitation." MCC § 33.0005 (definitions of "Dwelling (Single Family Detached)" and "Dwelling Unit"). Petitioners focus on the word "designed" and argue that a building need only to have been designed—at some point—for one dwelling unit and, thus, the 1906 structure is a dwelling. The difficulty that we have with petitioners' argument is that it ignores the template test requirement that the dwelling "continue to exist."

Again, the template test requires, among other things, that "[a]t least five dwellings lawfully existed on January 1, 1993 within the 160-acre square and those dwellings either continue to exist or have been replaced by lawful replacement dwellings." MCC § 33.2240(A)(3)(c). Contrary to petitioners' argument "continue to exist" does not simply mean that a building that used to be a dwelling need only have some sort of presence, however dilapidated or unrecognizable, in the physical world. The template test requires that a lawful dwelling "continue to exist" in the present tense, such that the dwelling, *as a dwelling*, must continue to exist as of date the template test is applied.[3] That requires us to look at

---

[3] "Continue" means "**1 a:** to be steadfast or constant in a course or activity : keep up or maintain esp. without interruption a particular condition, course, or series of actions \*\*\* **2:** to be permanent or durable : remain in existence : ENDURE, LAST." *Webster's Third Int'l Dictionary* 493 (unabridged ed 2002) (boldface in original). "Exist" means "to have being in any specified condition or place

the 1906 structure as it is designed as of petitioners' application date—not how it may have been designed in 1906 or some other point in the past. Thus, even taking petitioners' focus on the word "designed," we cannot agree that the 1906 structure continues to exist as a dwelling. The 1906 structure is not designed for a dwelling unit—at a minimum, it lacks a functional roof, intact exterior walls and windows, and an accessible entrance, all of which indisputably are design requirements for a dwelling unit.[4] Whether an owner of the 1906 structure lawfully could (which is disputed by the parties) restore the structure such that in the future it could be designed for a single dwelling unit is of no moment. The template test requires the dwelling to continue to exist as a dwelling at the time of petitioners' application for a new template dwelling. The 1906 structure does not meet that test. Accordingly, we affirm.

Affirmed.

---

or with respect to any understood limitation." *Id.* at 796. Thus, under that plain understanding, "continue to exist" in the context of the template test means that the dwelling, as a dwelling, *i.e.*, its particular condition, must remain or is maintained.

[4] Petitioners' reliance on *Recovery House VI v. City of Eugene*, 156 Or App 509, 965 P2d 488 (1998), to support their reading of "designed" in the dwelling definition is misplaced. In that case, we were not called upon to determine whether the house at issue was designed to be a single-family home because there was no dispute that it was (and continued to be). *Id.* at 511. We were only called on to decide whether the code in that case also required the house to be used for single-family occupancy for the proposed use to be permitted outright, *id.* at 511-12, which provides no guidance on the issue before us now.