Argued February 22, affirmed April 8, petition for review
denied June 25, 1974

# STATE OF OREGON, *Respondent, v.* OREGON CITY ELKS LODGE No. 1189, BPO ELKS (No. 82362), *Appellant.*

520 P2d 900

*Phil H. Ringle, Jr.,* Gladstone, and *Ronald D. Thom,* Oregon City, argued the cause for appellant. With them on the briefs was Leo Levenson, Portland.

*Thomas H. Denney,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before SCHWAB, Chief Judge, and FORT and TANZER, Judges.

TANZER, J.

Defendant was convicted of possession of gambling devices, ORS 167.147, and promoting gambling in the second degree, ORS 167.122, and was fined a total of $750. The events leading to the convictions arose from a "Charity Fun-D Nite" held by the Oregon City Elks Lodge No. 1189 on the evening of December 2, 1972, at its lodge building.

Defendant first contends that the indictment should have been set aside because it was found by a grand jury other than the grand jury which originally began the investigation. The record discloses that after the regular grand jury had begun investigating defendant's activities, a member of the grand jury informed the district attorney that he, the grand juror, had been present at the Elks lodge on the night in question. Thereafter, the district attorney moved the circuit court to constitute an additional grand jury, and the court so ordered. The additional grand jury returned the indictment in issue.

Defendant's motion to set aside the indictment was based on ORS 132.020 (4) which provides:

"Any inquiry or investigation required by law to be made by a grand jury shall be void, unless such inquiry or investigation was made entirely by the same grand jury."

■ Defendant contends that the indictment herein is void, because the grand jury which returned the indictment is not the same grand jury which commenced the investigation, and therefore the investigation was not made entirely by the same grand jury. However, we do not construe ORS 132.020 (4) as providing that once a grand jury has begun an investigation into a particular matter, no other grand jury may thereafter venture into that area.

■■ ORS 132.020 (4) is part of a statutory revision which authorizes the selection of more than one grand jury during a term of court and prescribes the law applicable to the additional grand juries. ORS 132.020 (2)[1] authorizes the court, in its discretion, to order the selection of one or more additional grand juries, and ORS 132.020 (3)[2] provides that laws applicable to the regular grand jury are equally applicable to the additional grand juries. ORS 132.020 (4), quoted above, is designed to prevent piecemeal grand jury investiga-

---

[1] ORS 132.020 (2) provides:

"When the court, in its discretion, considers that one or more additional grand juries is needed for the administration of justice, one or more additional grand juries shall be selected in the manner provided in subsection (1) of this section."

[2] ORS 132.020 (3) provides:

"Any law applicable to the grand jury is equally applicable to any additional grand jury selected under subsection (2) of this section, except that whenever any duties or functions are imposed upon the grand jury, it shall be sufficient if such duties or functions are performed by one of the grand juries selected under this section."

tions. The grand jury which indicts can rely only upon evidence presented to it, regardless of what evidence another grand jury may have heard.

In this case, there is no contention that the grand jury which returned the indictment against defendant did not fully investigate the matter itself or that it relied upon evidence presented only to the original grand jury. Therefore, there is no violation of ORS 132.020 (4).

■■ We note in passing that the mere fact that a grand juror had personal knowledge of the events under investigation did not require the constitution of a new grand jury to investigate the matter. Indeed, ORS 132.350[9] contemplates precisely such a situation and provides only that the juror must reveal his knowledge to his fellow jurors. In this case, it is not clear on what basis the court ordered the constitution of an additional grand jury, since the district attorney's motion, in addition to setting forth the fact of the grand juror's personal knowledge of the event, represented that numerous witnesses were involved and that there was substantial work to be done. Either of these latter representations would be an appropriate basis for the court to exercise its discretion and constitute an additional grand jury. ORS 132.020 (2). Defendant does not claim irregularity in the proceedings before the additional grand jury and makes no claim of actual prejudice.

---

[9] ORS 132.350 provides:

"(1) If a grand juror knows or has reason to believe that a crime which is triable in the county has been committed, he shall disclose the same to his fellow jurors, who shall thereupon investigate the same.

"(2) An indictment or presentment must not be found upon the statement of a grand juror unless he is sworn and examined as a witness."

Defendant next raises the issue of whether the indictment stated crimes against defendant.

■ Defendant was tried on three counts of an indictment. They alleged. simply that the defendant, an Oregon corporation, "did" various criminal acts. Defendant contends, inter alia, that the indictment does not state a crime because it does not allege specifically how defendant corporation is criminally liable under ORS 161.170.[④] Defendant contends that since the corporation is criminally liable only under the circumstances set out in ORS 161.170, the indictment must specify the circumstances which, in the particular case, make the corporation liable. In this case, defendant suggests that the indictment was defective because it did not name the officers or agents of the corporation

---

[④] ORS 161.170 provides:

"(1) A corporation is guilty of an offense if:

"(a) The conduct constituting the offense is engaged in by an agent of the corporation while acting within the scope of his employment and in behalf of the corporation and the offense is a misdemeanor or a violation, or the offense is one defined by a statute that clearly indicates a legislative intent to impose criminal liability on a corporation; or

"(b) The conduct constituting the offense consists of an omission to discharge a specific duty of affirmative performance imposed on corporations by law; or

"(c) The conduct constituting the offense is engaged in, authorized, solicited, requested, commanded or knowingly tolerated by the board of directors or by a high managerial agent acting within the scope of his employment and in behalf of the corporation.

"(2) As used in this section:

"(a) 'Agent' means any director, officer or employe of a corporation, or any other person who is authorized to act in behalf of the corporation.

"(b) 'High managerial agent' means an officer of a corporation who exercises authority with respect to the formulation of corporate policy or the supervision in a managerial capacity of subordinate employes, or any other agent in a position of comparable authority."

who actually committed, authorized, solicited or tolerated the criminal activity.

■ Such specificity is not required and, in fact, would be considered surplusage were it alleged. The indictment charged that defendant corporation committed the crimes of promoting gambling in the second degree and possession of gambling devices in the language of the statutes, and alleged the manner in which these crimes were committed with some particularity. It was therefore sufficient to state those crimes. *State v. Nussbaum,* 261 Or 87, 491 P2d 1013 (1971) ; *State v. Andrews,* 16 Or App 144, 517 P2d 1062 (1974).

■■ It is well settled in Oregon that an allegation that the accused committed the crime charged will support a conviction upon proof that the crime was committed by an agent. *See,* e.g., *State v. Campbell,* 265 Or 82, 506 P2d 163 (1973) ; *State v. Blackwell,* 241 Or 528, 407 P2d 617 (1965). Since a corporation is not a natural person, it can, by definition, act only through its officers and agents. Defendant was not and does not contend to have been misled by the allegations. In *State v. Shadley/Spencer/Rowe,* 16 Or App 113, 517 P2d 324 (1973), we held that the indictment need not allege particulars, but that particulars can be sought by discovery and, in the event of surprise at trial, a continuance may be in order. The indictment was sufficient to charge the corporation.

The other asserted grounds for demurrer have been considered, but do not warrant discussion.

Defendant's final assignment of error is that the trial court erred in denying its motion to suppress evidence.

■ The search warrant pursuant to which the evidence in this case was seized was based upon the affi-

davit of Linda Tucci. Miss Tucci had gone to the Oregon City Elks Lodge on the night in question, observed gambling activity and gambling paraphernalia there, and presented her observations in affidavit form to the magistrate who issued the search warrant. Defendant's motion to suppress was based on the contention that Miss Tucci was unlawfully on defendant's premises.

The evidence at the hearing on the motion shows that William Winter, a private investigator and a member of another Elks lodge, was employed by the Clackamas County District Attorney to look into possible unlawful gambling activities on defendant's premises. Winter hired Miss Tucci to accompany him to the "Charity Fun-D Nite." Lodge officials testified that members of other Elks lodges and female guests of Elks were welcome and that there were certain procedures for their admission, including the signing of the guest register. Defendant argues that Winter and his guest were unlawfully on the premises because Winter had failed to sign the guest register.

Winter's failure to sign the guest register is not constitutionally significant. He was an Elk in good standing and was entitled to be admitted to the lodge with a female companion. The evidence shows that there were many more guests than signatures, indicating that the rule regarding signing of the guest register was not enforced. At most, it would seem to be consistent with a spirit of fraternity that Winter would have simply been asked to comply with the rule rather than be expelled.

We do not mean to imply that the Elks lodge was an Elks sanctuary from the observations of non-Elks such as undercover policemen. The constitutional limi-

tations of undercover work need not be considered in this case since Winter was in fact an Elk.

■ While lawfully on the premises, Winter and Miss Tucci were entitled to make observations and report what they observed to whomever they wished. No constitutional right of defendant was violated. *Cf. Lewis v. United States*, 385 US 206, 87 S Ct 424, 17 L Ed 2d 312 (1966) ; *State v. Leppanen*, 253 Or 51, 453 P2d 172 (1969).

■ Upon oral argument, defendant asserted that Winter violated the defendant's reasonable expectation of privacy. *Katz v. United States*, 389 US 347, 88 S Ct 507, 19 L Ed 2d 576 (1967). We doubt whether a fraternal organization is capable of having such an expectation and we doubt the reasonableness of an expectation of privacy at a soiree attended by over 300 people. At the very most, the defendant may have had some nebulous sort of corporate expectation that none of over 300 Elks and guests would report their observations of illegal activities to the authorities. Freedom from telling is not a constitutionally protected expectation. As the United States Supreme Court answered a similar Fourth Amendment challenge in *Hoffa v. United States*, 385 US 293, 302, 87 S Ct 408, 17 L Ed 2d 374 (1966) :

> "* * * The petitioner, in a word, was not relying on the security of the hotel room ; he was relying upon his misplaced confidence that Partin [or, here, Tucci] would not reveal his wrongdoing. * * *"

Clearly, no Fourth Amendment rights of defendant were violated.

Affirmed.