MONACO, *Appellant,*
*v.*
UNITED STATES FIDELITY AND
GUARANTY COMPANY, *Respondent.*

550 P2d 422

*Richard H. Werschkul,* Portland, argued the cause

for appellant. With him on the briefs were Bullivant, Wright, Leedy, Johnson, Pendergrass & Hoffman.

*William L. Hallmark,* Portland, argued the cause for respondent. With him on the brief were Jones, Lang, Klein, Wolf & Smith.

McALLISTER, J.

## McALLISTER, J.

The plaintiff, Teresa Monaco, through her guardian ad litem, Caroline A. Monaco, brought this action against the defendant seeking recovery under the uninsured motorist coverage provisions of a policy issued by the defendant.

The plaintiff sustained personal injuries in a collision on January 24, 1974 while a passenger in a motor vehicle. The plaintiff's damages were stipulated to be in excess of $20,000. Neither the driver of the vehicle nor the vehicle itself was insured at the time of the accident.

Defendant had issued an automobile insurance policy to Caroline A. Monaco, mother of the plaintiff, under which plaintiff was a person insured. The policy contained the standard personal injury protection endorsement, and defendant paid plaintiff the sum of $8,322.35 in complete satisfaction of its obligation under that endorsement. Defendant also paid $1,677.65 to the plaintiff under the uninsured motorist coverage of that automobile insurance policy.

Plaintiff sought the balance she claimed was owing under the uninsured motorist coverage, the difference between the $10,000 policy amount and the $1,677.65 already paid, plus attorneys' fees. Defendant contended that it was entitled to reduce the $10,000 amount owed under the uninsured motorist coverage by the $8,322.35 paid under the personal injury protection endorsement and that it therefore owed no additional amount to the plaintiff.

The trial court entered judgment for the defendant.

The only question presented by this appeal is whether ORS 743.835 allows an insurer to subtract personal injury protection benefits paid to its insured from the amount due under the uninsured motorist coverage whether or not the insured is fully compensated for his or her loss.

Defendant's policy was issued to the plaintiff's mother pursuant to the statutory requirements of ORS 743.786—743.835, which mandate the extension of uninsured motorist coverage and personal injury protection benefits to any person insured under the type of motor vehicle liability policy issued in the case at bar. ORS 743.789; ORS 743.800.

This is the first time this court has been asked to interpret ORS 743.835. The statute was first enacted by Oregon Laws 1971, Chapter 523, Section 9, and remained unamended during the period when this action was brought. At that time ORS 743.835 provided:

> "Payment of any benefit required by ORS 743.800 to or for any insured and any payment required by ORS 743.825 to any health insurer or health care service contractor shall be applied in reduction of the amount of damage that the insured may be entitled to recover from any insurer under bodily liability or uninsured motorist coverage for the same accident."[1]

The policy issued in the present case includes a clause in language similar to the statute.[2]

The plaintiff's basic argument is that the insurer should not be allowed to reduce its liability under the uninsured motorist coverage until the insured-claimant has been fully indemnified for his or her loss.

[1] ORS 743.835 has been amended, effective January 1, 1976, by Oregon Laws 1975, Chapter 784, section 10, to read as follows:

"Payment by a motor vehicle liability insurer of personal injury protection benefits for its own insured shall be applied in reduction of the amount of damage that the insured may be entitled to recover from his insurer under uninsured motorist coverage for the same accident."

If there was any doubt about the legislative intent in ORS 743.835 prior to the 1975 amendment, that doubt has been removed by the very specific language of the 1975 version.

[2] "Any payments made by the Company under this insurance either as benefits to or on behalf of any *injured person* or as reimbursement, pursuant to Chapter 523 of Oregon Laws 1971 [ORS 743.800 to 743.835], to any other insurer or organization for such benefits paid by it shall be applied in reduction of the amount of damages which, because of *bodily injury* sustained in the same accident, such *injured person* may be entitled to recover from the Company or any other insurer under insurance afforded for either bodily injury liability or protection against uninsured motorists."

In other words, ORS 743.835 should be interpreted only to prohibit double recoveries, not to limit recovery in a case such as this one where the stipulated damages are in excess of the uninsured motorist coverage.

It is true that in the past, absent a showing of double recovery, this court has refused to uphold insurance contract provisions attempting to set off recovery under the uninsured motorist coverage on public policy grounds. *Amer. Motorists Ins. v. Thompson,* 253 Or 76, 79, 453 P2d 164 (1969); *Peterson v. State Farm Ins. Co.,* 238 Or 106, 111-115, 393 P2d 651 (1964).

Following such decisions, the legislature has amended the statutes to allow the insurer to set off amounts due the insured under the uninsured motorist coverage, or other policy provisions, by amounts received by the insured from other sources. ORS 743.792(7) et seq; ORS 743.792(11) et seq; ORS 743.828; ORS 743.830. Comparing the language of ORS 743.835 with the above cited statutes, it appears that ORS 743.835 clearly allows a reduction from the amount payable under the uninsured motorist coverage by benefits received by the insured from the personal injury protection endorsement.

Although all statutes can perhaps be more artfully drawn, there is no ambiguity in the language of ORS 743.835. It clearly does not limit reduction from the amount payable to situations where the total damages of the insured are less than the uninsured motorist policy coverage amount.

The plaintiff contends that interpreting ORS 743.835 in this manner frustrates the legislative intent in providing the personal injury protection benefits. Plaintiff cites legislative history which indicates that the two main reasons for mandating PIP was to provide quick payment of claims and to ensure that all insured drivers, their families and guests, and pedestrians injured by them, would recover medical and economic losses subject to limits purchased with-

[ 187 ]

out regard to fault.[3] Plaintiff argues that the second purpose is defeated by defendant's interpretation of ORS 743.835. This same argument, of course, could well be made against any of the other statutory provisions allowing setoffs. A more persuasive indication of legislative intent in enacting ORS 743.835 itself, however, is found in the May 19, 1971 written presentation of the Special Advisory Committee on Auto Insurance to the Senate Committee on the Judiciary. Therein it was stated that the purpose of section 9 of House Bill 1300, which became ORS 743.835, was "that money paid by an insurer under this coverage [personal injury protection] is not in addition to the policy limits in 'limits' cases."

■ Whatever the legislative history of an act may indicate, it is for the legislature to translate its intent into operational language. This court cannot correct clear and unambiguous language for the legislature so as to better serve what the court feels was, or should have been, the legislature's intent. *Lane County v. Heintz Construction Co. et al,* 228 Or 152, 157, 364 P2d 627 (1961).

The plaintiff cites numerous cases from other jurisdictions which did not allow medical payments to be set off against the coverage provided under the uninsured motorist provisions. In all of those cases the insurer had included a clause in the policy allowing such a reduction but there was no statutory authority to do so. In those cases, the court voided the policy provisions on the ground of public policy. Typical reasoning is found in *Bacchus v. Farmers Ins. Group Exchange,* 106 Ariz 280, 475 P2d 264, 267 (1970):

"* * * By our statute, against financially irresponsible drivers a minimum coverage must be made available to insureds, not as a convenience but rather as a Legislative mandate and in amounts of dollars and cents which leave nothing to the imagination of drafters of the

[3]February 24, 1971 Statement regarding proposals of Insurance Commissioner's Special Advisory Committee on Auto Insurance by the Insurance Commissioner.

insurance policies—$10,000 per person and $20,000 per occurrence. The fact that the motorist sees fit to clothe himself with other insurance protection and pays a premium therefor—such as medical payments—cannot alter the mandatory safeguards that the Legislature considers necessary for the well being of the citizen-drivers of our state. More particularly, a policy provision which the insured considers to be additional protection and for which he pays a premium with such extra protection in mind cannot be transposed by the insurer into a reduction of the mandatory minimum coverage."

See, also, *Glidden v. Farmers Auto. Ins. Ass'n,* 57 Ill2d 330, 312 NE2d 247, 251 (1974); *Tuggle v. Government Employees Ins. Co.,* 207 S2d 674, 675-676, 24 ALR3d 1343 (Fla 1968); Widdis, Guide to Uninsured Motorist Coverage § 2.62 (1976 Supp); Comment, Uninsured Motorist Coverage—Validity of Medical Setoff Clause, 38 Mo L Rev 346 (1973); Annotation, Uninsured Motorist—Medical Expenses, 24 ALR3d 1353.

■ In the absence of ORS 743.835, these authorities might be persuasive. However, our legislature has adopted a statute which clearly and specifically allows an insurer to set off personal injury protection benefits paid against the liability under the uninsured motorist coverage, whether or not the claimant is fully indemnified.

The plaintiff points out that California has a similar statute to ORS 743.835. A review of California cases arising under that statute indicates the California appellate courts agree with our interpretation of ORS 743.835. The California Supreme Court has not yet addressed the issue.

*Northwestern Mut. Ins. Co. v. Rhodes,* 238 CA2d 64, 47 Cal Rptr 467 (1965), involved an insurance policy which provided for uninsured motorist coverage up to $10,000 with arbitration provided if the parties could not agree on the liability. The policy also provided for medical expenses up to $2,000. The controversy went to arbitration and the arbitrator awarded the insured

$5,965.62 "in full settlement of all claims submitted to this Arbitration." The insured sought medical expenses above the arbitration award amount. The court held:

"Section 11580.2 of the Insurance Code contains provisions which are obviously aimed at preventing a double recovery, or, as the trial court used the word, a 'windfall,' under the uninsured motorist section. And, as a side effect of these provisions, there is afforded by them to an arbitrator some degree of discretion with respect to what elements he shall include or exclude from an award; it is conceivable that situations might occur in which the arbitrator deemed it sensible to exclude payments to be made in the future with respect to the undetermined extent and duration of injuries received by a person seeking arbitration, but, in such instances, the arbitrator must include an express provision that the award under the uninsured motorist endorsement does not include any payment for medical expenses and that the arbitration award is not prejudicial to a separate award under a valid and collectible medical payment provision available to the insured. Such holding, if appropriate, must be expressly made by the arbitrator. In the absence of such a specific qualifying determination, the arbitrator must find, and award, the total damages suffered by the petitioner, including his medical expenses. And, in such cases, it would be improper to allow a second recovery by reason of the provisions of the medical payment portion of the policy." 238 CA2d at 68; 47 Cal Rptr at 469-470.

This case, standing alone, might be subject to the construction that the plaintiff has given it, i.e., that the California statute allows setoffs only where a double recovery would result. Reading later California cases, however, indicates that the plaintiff has misstated the holding of *Northwestern Mutual.*

*Campbell v. Farmers Ins. Ex.,* 260 CA2d 105, 67 Cal Rptr 175 (1968) makes clear that in any event the arbitrator's award may not exceed the total limit of the uninsured motorist coverage endorsement. *Northwestern Mutual* must, therefore, be read that whether the arbitrator finds it appropriate to award damages for

medical expenses or not, the limits of the uninsured motorist coverage must control.

In *Fisher v. State Farm Mutual Auto. Ins. Co.*, 243 CA2d 749, 52 Cal Rptr 721 (1966) the insurance company sought to deduct from the arbitrator's award amounts already paid to the insured as medical benefits. The court said, 52 Cal Rptr at 722-723, that if the insured had requested the arbitrator to take those amounts into consideration in determining the award, it would have been entitled to a deduction. The insurer failed to do so and instead agreed that "all claims" were being submitted to arbitration. Under those facts, the court would not disturb the arbitrator's award.

The question of statutory construction was squarely presented in *Cannizzo v. Guarantee Ins. Co.*, 245 CA2d 70, 53 Cal Rptr 657 (1966). The insurance company in that case did *not* include a provision in its policy allowing a setoff from the uninsured coverage for benefits paid under the medical benefits provision. The insurer attempted to rely solely on the statutory authorization. The court looked at the California statute, which provided:

> "* * * Any loss payable under the terms of the uninsured motorist endorsement or coverage to or for any person may be reduced:
>
> * * * * *
>
> "(2) By the amounts paid or due to be paid under any valid and collectible automobile medical payment insurance available to the insured."

California Code §11580.2(g). 245 CA2d at 72.

The court held the statute was permissive, not mandatory, and that it was therefore up to the insurance carrier to "clearly provide for the permissive reduction provided for by the statute." The failure of the insurance company to include a provision to that effect defeated its claim for a setoff. 245 CA2d at 73.

We find the California cases are in accord with our interpretation of ORS 743.835.

■ The defendant in the present case has clearly and unambiguously included a provision allowing a setoff of medical payments against the uninsured coverage. ORS 743.835 allows such a setoff. The plaintiff is not entitled to receive any further sums under the uninsured motorist coverage provisions of the policy issued by the defendant.

The judgment of the trial court is affirmed.