Argued and submitted February 9, affirmed October 27, 1999, petition for review denied February 29, 2000 (330 Or 71)

# HOUSING AUTHORITY OF PORTLAND,
## *Respondent,*

*v.*

## Archie COMSTOCK,
## *Appellant.*

## (98F 002785; CA A101517)

988 P2d 407

464 

Ann B. Witte argued the cause and filed the briefs for appellant.

Paul W. Jones argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, Deits, Chief Judge, and Wollheim, Judge.

LANDAU, P. J.

Deits, C. J., dissenting.

**LANDAU, P. J.**

Plaintiff Housing Authority of Portland (HAP) initiated this action to terminate defendant's residential tenancy under ORS 90.400(3) on the ground that defendant had threatened one of HAP's employees with bodily injury. The trial court held in favor of HAP, and defendant appeals. Defendant concedes that, under ORS 90.400(3), a tenancy may be terminated for threatening a "landlord," but argues that the statute does not authorize termination in this case because the person he threatened was merely an employee of the landlord and not the landlord itself. We affirm.

The pertinent facts are not in dispute. Defendant leased an apartment from HAP. On February 11, 1998, Charles Moss, a superintendent for a construction company working on contract for HAP, met with defendant to discuss construction work that was taking place at the apartment building. Defendant became angry, directed obscene and threatening language at Moss, told him to leave, and turned to a room where Moss knew that defendant kept a rifle. Moss left "very speedily." That same day, Thomas Popiel, a construction management specialist who worked for HAP, met with defendant. Defendant again became angry and threatened to hit Popiel in the face if he did not leave.

On February 13, 1988, HAP mailed a notice of termination of tenancy to defendant. The notice stated:

> "Your lease is being terminated because of the following acts: On February 11, 1998, you threatened a contractor working for HAP with a gun, threatened to hit a HAP employee in the face, and were verbally abusive, intimidating and threatening to other HAP employees and contract workers."

A week later, HAP initiated this action. Defendant answered, among other things, challenging the sufficiency of the notice under ORS 90.400(3).

After trial, the court found that defendant had threatened Popiel with personal injury. The court then concluded that, because Popiel was an employee of HAP, he *was*

HAP for the purposes of ORS 90.400(3). Thus, because defendant threatened HAP, the court concluded that HAP's notice was sufficient under ORS 90.400(3).

 It is that ruling that defendant challenges on appeal. According to defendant, ORS 90.400(3) provides for termination on 24 hours' notice only when a tenant threatens a "landlord" with personal injury. It does not apply, he contends, when the tenant threatens an employee of the landlord. HAP argues that the statute expressly defines "landlord" to include corporate entities, which only exist through the actions of their agents. Thus, an act taken against the agent in the scope of its agency, HAP argues, is an act taken against the corporation. We agree with HAP.

ORS 90.400(3) provides, in part:

"The landlord, after 24 hours' written notice specifying the causes, may immediately terminate the rental agreement and take possession in the manner provided * * * if:

"(a) The tenant * * * seriously threatens immediately to inflict personal injury, or inflicts any substantial personal injury, upon the landlord or other tenants[.]"

ORS 90.100(15) defines the term "landlord" as, among other things, "the owner, lessor or sublessor of the dwelling unit or the building of which it is a part." The term "owner" is defined in ORS 90.100(20) as "one or more persons, jointly or severally, in whom is vested" title to the property. "Person," in turn, is defined in ORS 90.100(21) as including "an individual or organization." "Organization," finally, is defined in ORS 90.100(19) as including "a corporation, government, governmental subdivision or agency." Thus, a "landlord" includes a "corporation, government, governmental subdivision or agency." It necessarily follows that a tenant's threat of personal injury to "a corporation, government, governmental subdivision or agency" suffices to authorize termination of a tenancy with 24 hours' notice under ORS 90.400(3).

██ By definition, a corporation can act only through its officers and agents. *See, e.g., Alexander v. U.S. Tank & Const. Co., Inc.*, 114 Or App 266, 268, 834 P2d 532 (1992), *rev den* 315 Or 442 (1993) ("corporations can only act through natural persons"); *State v. Oregon City Elks*, 17 Or App 124, 130,

520 P2d 900 (1974) ("Since a corporation is not a natural person, it can, by definition, act only through its officers and agents."). It must be assumed, therefore, that, when the legislature referred to making threats of personal injury to a corporation, it meant threats to the agents of the corporation. Any other construction would necessitate concluding that, when the legislature referred to making threats against a landlord, it did not mean to include corporations. That would require us not only to leave a sizeable loophole in the statute but also to conclude that the statute—which expressly defines "landlord" to include corporations—does not mean what it plainly says. We are constrained not to omit from a statute language that the legislature has included. ORS 174.020.

The dissent ignores that important constraint. It concludes that the statutory term "landlord" does not include "corporations" and instead is limited to "natural persons." It arrives at that conclusion by observing that the term "landlord" is expressed in the singular, as are the components, "owner, lessor, or sublessor," and then reasoning that, if the legislature wanted to include agents of the owner, lessor, or sublessor, then it would have said so.

■ The problem with the dissent's reasoning is that it stops too quickly in defining the relevant terms and neglects to consider how the same statute defines "owner, lessor, or sublessor." The express definition of relevant statutory terms cannot simply be ignored or written off as unduly attenuated "context." The legislature defined "owner" to include corporations, that is to say, entities other than natural persons. If, as the statute expressly provides, such corporate owners may be threatened with "personal injury," then our interpretive choices are limited: Either the legislature intended that the term "corporation" refers to those who act on its behalf, or the legislature made a mistake in defining the term "landlord" to refer to corporations at all. Mindful of our obligation not to presume to correct possible legislative mistakes, *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976), we have chosen the only logical interpretive alternative. The trial court did not err in concluding that defendant's threats to an employee of HAP were sufficient to permit HAP to terminate defendant's tenancy under ORS 90.400(3).

Defendant asserts other arguments in favor of reversal, which we reject without discussion.

Affirmed.

**DEITS, C. J.,** dissenting.

The decisive question in this case is whether the term "landlord" in ORS 90.400(3)(a) includes all of the landlord's agents and employees, as well as the actual landlord him, her, or itself. ORS 90.400(3)(a) provides:

> "The landlord, after 24 hours' written notice specifying the causes, may immediately terminate the rental agreement and take possession in the manner provided in ORS 105.105 to 105.168, if:
>
> "(a) The tenant, someone in the tenant's control or the tenant's pet seriously threatens immediately to inflict personal injury, or inflicts any substantial personal injury, *upon the landlord* or other tenants[.]" (Emphasis added.)

ORS 90.100(15) defines "landlord" for purposes of the Residential Landlord and Tenant Act as meaning

> "the owner, lessor or sublessor of the dwelling unit or the building of which it is a part, and it also means a manager of the premises who fails to disclose as required by ORS 90.305."[1]

Thus, the word "landlord" in ORS 90.400(3)(a) itself is stated in the singular, and it is not accompanied by any language (*e.g.*, "or his agents or employees") to suggest that any persons or entities other than the actual landlord are contemplated. Similarly, the definition of the term "landlord" is not compatible with the understanding that it embraces all of the landlord's employees or agents. To the contrary, the definition indicates that the term *can* include only one agent of the landlord or entity other than the landlord *qua* landlord,

---

[1] ORS 90.305(1) provides:

"The landlord or any person authorized to enter into a rental agreement on behalf of the landlord shall disclose to the tenant in writing at or before the commencement of the tenancy the name and address of:

"(a) The person authorized to manage the premises; and

"(b) An owner of the premises or a person authorized to act for and on behalf of the owner for the purpose of service of process and receiving and receipting for notices and demands."

*i.e.*, a "manager of the premises" who fails to make the disclosures required by the Act.

Based on the language of ORS 90.400(3)(a) and of the statutory definition of the word "landlord" itself, the clear answer to the question confronting us is that "landlord" as used in ORS 90.400(3)(a) means *the* actual landlord and, if it includes *any* employees or agents of the landlord, then it does not extend to personnel, like those involved here, who are not premises managers.

However, the majority reaches the opposite answer and, out of apparent obedience to *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d 1143 (1993), it finds that answer in statutes other than the one we are construing or the one that defines the relevant term. Instead of focusing on those provisions, the majority gravitates in turn from the definition of "landlord" in ORS 90.100 to that section's definitions of "owner," "person" and "organization." At the end of that chain of provisions, which the majority presumably understands to be "context" under the *PGE* rubric, the majority finds that "corporations" can be "landlords." The majority reasons further that corporations can act only through their human agents and officers, that corporations themselves cannot suffer injury and, therefore:

> "It must be assumed * * * that, when the legislature referred to making threats of personal injury to a corporation, it meant threats to the agents of the corporation. Any other construction would necessitate concluding that, when the legislature referred to making threats against a landlord, it did not mean to include corporations. That would require us not only to leave a sizeable loophole in the statute but also to conclude that the statute—which expressly defines 'landlord' to include corporations—does not mean what it plainly says." 163 Or App at 467.

I do not dispute that corporations can be landlords. However, the majority's analytical approach causes it to lose sight of the facts that not *all* landlords are corporations, that ORS 90.400(3)(a) *refers* to landlords generically rather than corporate landlords specifically, and that the section's concern with a form of tenant conduct that can only affect natural persons is not necessarily an unintended "loophole in the

statute" as opposed to an intentional legislative choice to distinguish between threats to landlords who are natural persons and those who are not.

That that was the legislature's intent is borne out by paragraph (b) of ORS 90.400(3). Unlike paragraph (a), which includes physical *threats* only to the landlord and to other tenants among the bases for a 24-hour notice and eviction, paragraph (b) allows the landlord to pursue that remedy in cases where the tenant actually *inflicts* personal injury, *inter alia*, on persons who are "on the premises with permission of the landlord or another tenant." Hence, a literal reading of the word "landlord" in paragraph (a) does not leave a loophole in the statute but is instead consistent with a logical scheme of distinction and gradation. A threat of injury to the landlord's person is enough to give rise to the remedy under ORS 90.400(3), but the actual infliction of injury on other persons associated with the landlord is required. Contrary to the majority's understanding, that distinction was not an insensible one for the legislature to make in connection with an eviction remedy that, as described in ORS 90.400(3)(e), is reserved for tenant conduct that is "outrageous in the extreme."

Insofar as the majority's concern is that a literal reading of the word "landlord" in ORS 90.400(3)(a) results in a disparity in the way that the statute treats "natural" and corporate landlords, the simple answer is that that, too, is a distinction the legislature was entitled to make. A threat of injury to one's landlord is conduct that the legislature could have regarded as serious enough to warrant the extreme remedy for which ORS 90.400(3) provides, but the legislature was not required to extend that remedy to situations where the landlord itself cannot suffer injury and therefore cannot be meaningfully affected by threats of injury.[2]

---

[2] The majority maintains that my interpretation ignores the word "corporation" in ORS 90.100 and, therefore, violates the requirement of ORS 174.010 that the courts not "omit from a statute language that the legislature has included." 163 Or App at 467. I, of course, do not agree with the majority. In any event, ORS 174.010 also prohibits the courts from inserting into statutes what the legislature has not. The term "agents" that the majority reads into the ORS 90.100 definitions and into ORS 90.400(3)(a) is not to be found in those provisions as the legislature wrote them. It is noteworthy in that respect that the legislature *did* use the word "agents" and its analogs elsewhere in ORS chapter 90, where they *do* reflect its

In short, the statute as written and as read literally makes sense. Beyond that, however, the main reason why this court should read the statute literally—and thus interpret the words "the landlord" to mean "the landlord" rather than "the landlord and the landlord's agents"—is that that is what the statute says. Even if the majority were right in the view that there is a "loophole" or other problem with the statute as so written and as so read,

> "it is for the legislature to translate its intent into operational language. This court cannot correct clear and unambiguous language for the legislature to better serve what the court feels was, or should have been, the legislature's intent." *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976).

When all is said and done, the majority's holding realistically turns more on the word "corporation" contained in one of the definitions in ORS 90.100 than it does on the word "landlord" (or any other words) in ORS 90.400(3)(a). However, it is the latter provision that we are construing. I acknowledge that the majority's approach may be a tenable application of the *PGE* methodology. However, where the text of the statute in question is unambiguous and its clearly expressed language is conclusive of the issue in the case, judicial efforts to find the "intended" meaning of the statute elsewhere are more conducive to obfuscation than illumination.

I would hold that the legislature meant what it said in ORS 90.400(3) and that plaintiff has no right to proceed under that statute.[3] Consequently, I respectfully dissent.

---

intent. *See, e.g.*, ORS 90.322(1)(d) (relating to entry of dwelling by "landlord or landlord's agent"); ORS 90.243(1)(c)(A) (relating to abstinence by "employees, staff, agents of the landlord" in drug and alcohol free housing); ORS 90.150(2) ("service or delivery of actual notice to an agent of the landlord shall constitute notice to the landlord").

[3] I have considered plaintiff's other arguments, as well as the one on which the majority bases its decision, and find them unpersuasive.