Argued and submitted July 7, 2004, affirmed Februrary 9, 2005

## STATE OF OREGON,
*Respondent,*

*v.*

## CHRIS ALLEN STAMPER,
*Appellant.*

### 01-1640; A117625

106 P3d 172

Donato B. Masaoy argued the cause and filed the brief for appellant.

Laura S. Anderson, Assistant Attorney General, argued the cause for respondent. With her on the brief were Hardy Myers, Attorney General, and Mary H. Williams, Solicitor General.

Before Landau, Presiding Judge, and Brewer, Chief Judge, and Armstrong, Judge.

LANDAU, P. J.

## LANDAU, P. J.

ORS 163.425 provides that a person commits the crime of sexual abuse in the second degree "when that person subjects another person to sexual intercourse * * * and the victim does not consent thereto." At issue in this case is the meaning of the phrase "and the victim does not consent thereto." It is a question of first impression and a difficult one at that. Defendant argues that the statute requires the state to prove that the victim did not actually consent and that the trial court erred in concluding otherwise. The state argues that it is sufficient that there is proof that the victim was under the age of 18 and therefore incapable of consenting, regardless of whether the victim actually consented. Both arguments are plausible; neither is free of problems. But, after carefully considering the text of the statute in its context, its legislative history, and relevant principles of statutory construction, we conclude that the state's reading is more likely the one that the legislature intended. We therefore affirm.

The relevant facts are not in dispute. Defendant, an adult, engaged in sexual intercourse with his niece, who was 16 and 17 years old during the relevant time. He was indicted on five counts of sexual abuse in the second degree. The indictment alleged in part that defendant "did unlawfully and knowingly subject [the victim] to sexual intercourse, [the victim] not consenting thereto."

Defendant demurred to the indictment on the ground that it did not state a crime and was not sufficiently definite and certain. He argued that ORS 163.425 does not apply to consensual intercourse with a person under 18 years of age, that conviction based solely on the age of the victim violates Article I, section 20, of the Oregon Constitution, and that the indictment failed to allege that the victim was under the age of 18. The trial court disallowed the demurrer.

Defendant then waived jury trial and was tried on stipulated facts on one count of sexual abuse in the second degree. Defendant and the state stipulated that he was 29 and 30 years old during the time he engaged in sexual intercourse with his niece and that his niece was 16 and 17 during

that time. The parties did not stipulate to any facts concerning whether the victim actually consented to the sexual intercourse. Defendant moved for a judgment of acquittal, arguing that, in the absence of evidence that the victim did not actually consent, the stipulated facts were legally insufficient. The trial court denied the motion and found defendant guilty on the ground that, the victim being under 18 at the time of the offense, she was incapable of consent.

On appeal, defendant advances a number of assignments of error, one of which is that the trial court erred in denying his motion for a judgment of acquittal.

In reviewing the trial court's denial of a motion for a judgment of acquittal, we examine the evidence in the light most favorable to the state to determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *State v. King*, 307 Or 332, 339, 768 P2d 391 (1989). When the dispositive issue involves the meaning of applicable statutes, we review the court's ruling as a matter of law. *State v. Rodarte*, 178 Or App 173, 176, 35 P3d 1116 (2001).

Defendant argues that ORS 163.425 unambiguously means what it says: An element of the offense of sexual abuse in the second degree is that "the victim does not consent" to sexual intercourse. According to defendant, that the statute requires proof of actual lack of consent is confirmed explicitly by the legislative history, which shows that legislators considering the bill that became ORS 163.425 understood the statute to require proof of actual lack of consent and not merely incapacity to consent.

The state also argues that the statute unambiguously means what it says, that is, that proof that "the victim does not consent" to sexual intercourse may be established by evidence that the victim is too young to consent as a matter of law. According to the state, other provisions of the criminal code plainly provide that victims under the age of 18 are incapable of consenting to a sexual act. The state acknowledges that portions of the legislative history support defendant's reading of the statute. The state, however, insists that defendant's reading directly conflicts with other portions of the criminal code and therefore is untenable.

We resolve the parties' dispute regarding the meaning of ORS 163.425 according to the interpretive method set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993). In accordance with that method, we attempt to ascertain the intended meaning of the statute first by reference to its text in context. *Id.*; *State v. McCoin*, 193 Or App 623, 626, 91 P3d 760 (2004). In our examination of the text in context, we assume that the legislature intended the words of the statute to carry their ordinary meanings unless the phrasing of the statute suggests that the legislature intended different meanings to apply. *PGE*, 317 Or at 611; *see also State v. Ausmus*, 336 Or 493, 504, 85 P3d 864 (2004). If, after examining the text in context, we conclude that the statute is capable of multiple constructions that are not "wholly implausible," we examine the legislative history and, if necessary, other aids to construction. *Owens v. MVD*, 319 Or 259, 268, 875 P2d 463 (1994) (resort to legislative history is necessary unless alternative interpretations are "wholly implausible").

As we noted at the outset of this opinion, ORS 163.425 provides that a person commits the crime of sexual abuse in the second degree if that person subjects another person to sexual intercourse "and the victim does not consent thereto." Ordinarily, "to consent" means to give express agreement. *See Webster's Third New Int'l Dictionary* 482 (unabridged ed 2002) (defining the verb "consent" as "to express a willingness (as to accept a proposition or carry out a particular action) : give assent or approval : agree"). That definition of the term certainly is consistent with defendant's contention that the statute requires proof that the victim expressed an unwillingness to engage in sexual intercourse. Of course, resort to a dictionary definition does not establish that the legislature intended that definition to apply; to determine that, we must examine the context in which the legislature used the term. *State v. Holloway*, 138 Or App 260, 265, 908 P2d 324 (1995).

The immediate context is the phrase or sentence in which the term appears. ORS 163.425 employs the phrase "and the victim does not consent thereto." Nothing in that phrase, or the sentence in which it appears, or for that matter in the entire section in which the sentence appears, mentions

incapacity to consent. The statute merely refers to the necessity of proving a lack of "consent."

■     The broader context of a statute also includes other statutes *in pari materia*, that is, on the same subject, the rationale being that, in the absence of evidence to the contrary, it is safe for us to assume that the legislature employs the same terms consistently throughout related statutes. *State v. Carr*, 319 Or 408, 412-13, 877 P2d 1192 (1994). One such statute in this case is ORS 163.415, which sets out the elements of the related crime of sexual abuse in the third degree:

"(1)    A person commits the crime of sexual abuse in the third degree if the person subjects another person to sexual contact and:

"(a)    The victim does not consent to the sexual contact; or

"(b)    The victim is incapable of consent by reason of being under 18 years of age."

By its terms, ORS 163.415 requires proof that the victim *either* "did not consent" to the sexual contact *or* "is incapable of consent" because of his or her age. That disjunctive phrasing suggests that the legislature regarded actual lack of consent to be something distinct from incapacity to consent. If the phrase "does not consent" includes incapacity to consent, the reference to incapacity to consent by reason of the victim's age would be surplusage. As a general rule, we assume that the legislature did not intend any portion of its enactments to be meaningless surplusage. ORS 174.010; *Bolt v. Influence, Inc.*, 333 Or 572, 581, 43 P3d 425 (2002).

■     The disjunctive phrasing of ORS 163.415 also seems significant when it is contrasted with the phrasing of ORS 163.425, which refers only to proof that the victim "did not consent" and which omits any reference to the incapacity to consent phrasing that appears in ORS 163.415. That difference in phrasing recalls another general rule, which is that, when the legislature includes a provision in one section of a statute but omits the provision in another section of the same statute, we assume that the omission was intentional.

*Bayridge Assoc. Ltd. Partnership v. Dept. of Rev.*, 321 Or 21, 31, 892 P2d 1002 (1995).

Other related statutes, however, suggest that determining the intended meaning of ORS 163.425 is not as easy as invoking a few rules of construction. One such related statute is ORS 163.315, which provides:

"(1) A person is considered incapable of consenting to a sexual act if the person is:

"(a) Under 18 years of age;

"(b) Mentally defective;

"(c) Mentally incapacitated; or

"(d) Physically helpless."

Certainly, sexual intercourse is a "sexual act" within the meaning of that statute. And nothing in ORS 163.315 suggests that it does not apply to ORS 163.425. Why would the legislature require proof that a victim under the age of 18 in fact did not consent to sexual intercourse if the victim could not consent as a matter of law?

■ The broader context of a statute also includes prior versions of the statute and related statutes, *State v. Webb*, 324 Or 380, 390, 927 P2d 79 (1996), and prior judicial construction of those statutes, *Young v. State of Oregon*, 161 Or App 32, 35, 983 P2d 1044, *rev den*, 329 Or 447 (1999). The original version of the statute defining sexual abuse in the second degree provided:

"(1) A person commits the crime of sexual abuse in the second degree if he subjects a person to sexual contact; and

"(a) The victim does not consent to the sexual contact; or

"(b) The victim is incapable of consent by reason of being mentally defective, mentally incapacitated or physically helpless."

ORS 163.415 (1971). If read literally, the statute did not apply when a person subjects a victim to sexual contact and the victim is incapable of consent by reason of being under 18 years of age; the statute specified that the state must prove either that "[t]he victim does not consent" or that the victim is

incapable of consent for the listed reasons—which, however, did not include the age of the victim.

Nevertheless, in *State v. Landino*, 38 Or App 447, 590 P2d 737, *rev den*, 286 Or 449 (1979), we concluded that the phrase "[t]he victim does not consent" necessarily includes incapacity to consent by reason of the age of the victim. In that case, the indictment alleged that the defendant subjected the victim to sexual contact and that the victim was under 18 years of age. *Id.* at 449. The defendant demurred on the ground that the indictment was insufficient because the statute required an allegation that the victim either did not actually consent or was incapable of consenting for any of the reasons specified in the statute. *Id.* The state argued that, because ORS 163.315 provides that a person under 18 is legally incapable of consenting to a sexual act, it was not necessary to allege that the victim did not actually consent. *Id.* We agreed with the state. We acknowledged that, if that is so, it was unnecessary for the legislature to have specifically mentioned incapacity by reason of being mentally defective, mentally incapacitated, or physically helpless. *Id.* We nevertheless concluded that the only tenable reading of the relevant statutes as a whole was that the list was merely a redundancy. *Id.* at 451.

The state's argument in this case tracks precisely its argument—and our holding—in *Landino*. That is, because ORS 163.315 continues to provide that a victim under the age of 18 is legally incapable of consenting, to establish the elements of second-degree sexual abuse under ORS 163.425, it is not necessary to prove that a victim under age 18 did not actually consent.

Also considered part of the broader context of a statute is the legislative history of related statutes. *Goodyear Tire & Rubber Co. v. Tualatin Tire & Auto*, 322 Or 406, 415-16, 908 P2d 300 (1995), *modified on recons*, 325 Or 46, 932 P2d 1141 (1997). In this case, the legislative history of the statutes at issue in *Landino*—ORS 163.315 and ORS 163.415 (1971)—sheds some light on what the legislature possibly was contemplating concerning the meaning of the statutory phrase "the victim does not consent," at least as it was used in

statutes enacted at that time. There is an extended discussion concerning the subject of consent in the commentary to the 1971 revisions to the criminal code. Concerning the intended meaning of ORS 163.315, in particular, the commentary states:

> "Lack of consent is the common denominator for all the crimes proscribed in this article. This section is intended to define the limits of legal incapacity to consent so as to eliminate any efforts to make the term control in instances other than those specified.
>
> "Generally speaking, a sexual act is committed upon a person 'without his consent' in the following instances: (1) when the victim is forcibly compelled to submit; (2) *when the victim is considered to be incapable of consenting as a matter of law*; and (3) when the victim does not acquiesce in the actor's conduct."

Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report §§ 105, 106 (July 1971) (emphasis added). Describing the effect of its proposed revisions on existing law, the commentary explains that it is consistent with longstanding case law that the consent of a victim "under the age denominated in the statute is deemed not to be consent *and therefore lack of consent is presumed in law.*" *Id.* (emphasis added). Indeed, the commentary relates that, under existing case law, an allegation that an underage victim did not actually consent to a sexual act " 'may be treated as surplusage.' " *Id.* (quoting *State v. Lee*, 33 Or 506, 510, 56 P 415 (1899)).

That legislative history certainly is consistent with *Landino* and with the state's contention that, because the law presumes that a victim of sexual contact who is under 18 years of age did not consent to the contact, an allegation that the victim actually did not consent is unnecessary.

Still, it could also be argued that we were wrong in *Landino*. In that regard, it is interesting to note that, in response to *Landino*, the legislature amended the statute by adding to the forms of incapacity listed in ORS 163.415(1)(b) that the victim was "under 18 years of age." Or Laws 1979, ch 489, § 1. It is at least arguable that, by adding that phrase to paragraph (1)(b), the legislature signaled that it thought that

*Landino* was incorrect in concluding that the phrase "the victim does not consent" that appears in paragraph (1)(a) already incorporated that form of incapacity to consent.

It also could be argued that the legislature, having taken the trouble in ORS 163.315 to specify four different ways in which a victim may be considered incapable of consent, would have mentioned one of them if it had intended any to apply to ORS 163.425. In point of fact, the legislature has referred to one or more of those forms of incapacity in a number of other statutes. Statutes setting out the elements of other sex offenses expressly mention some or all of the forms of incapacity to consent mentioned in ORS 163.315. ORS 163.375, for example, provides that a person who has sexual intercourse with another person commits first-degree rape if, among other things, "the victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness." ORS 163.405 similarly provides that a person commits the crime of sodomy in the first degree if the person engages in deviate sexual intercourse with another person and, among other things, "the victim is incapable of consent by reason of mental defect, mental incapacitation or physical helplessness." The phrasing of such statutes could reasonably be taken to suggest that the legislature is consciously picking and choosing which forms of incapacity will apply to each crime. In ORS 163.425, the legislature said nothing about incapacity at all.

We pause to recap our analysis thus far. We confront a statute that appears capable of being read either of two ways. On the one hand, as defendant argues, the portion of ORS 163.425 requiring proof that "the victim does not consent" could be read to mean that the victim does not actually consent. That reading of the statute is consistent with the ordinary meaning of the relevant terms. It also is consistent with other statutes that suggest that the legislature understands that there is a difference between an actual lack of consent and legal incapacity to consent for any of several different reasons, one of which is the age of the victim. The problem with that reading is that it runs afoul of ORS 163.315, which provides that underage victims cannot consent as a matter of law, and with the legislative history of that statute, which suggests that the legislature understood that a minor

victim's lack of consent to sexual contact is presumed as a matter of law. It also cannot be reconciled with our reasoning in *Landino*.

On the other hand, as the state suggests, the phrase "the victim does not consent" could be read to mean that the victim is incapable of consenting, regardless of whether the victim actually consented. That reading of the statute gives full effect to ORS 163.315 and the notion that victims under the age of 18 are legally incapable of consenting. It is also consistent with *Landino*. The problem with that reading, however, is that—as in the case of the statute at issue in *Landino*—it renders superfluous portions of other statutes expressly reciting different forms of incapacity to consent.

Neither reading is clearly correct. Neither is "wholly implausible." We therefore turn to an examination of the legislative history of ORS 163.425. *Owens*, 319 Or at 268.

ORS 163.425 was enacted in 1983. Or Laws 1983, ch 564, § 1. It was introduced as Senate Bill (SB) 483 (1983) at the request of then-Benton County District Attorney Peter Sandrock and the Oregon District Attorneys Association. As Sandrock explained to both the Senate and House judiciary committees, the bill was drafted to "fill a gap" in the existing sexual offense statutes that were enacted in 1971.

The existing sex offense statutes originated with the criminal code revisions of 1971. Or Laws 1971, ch 743. Under the 1971 law, a person who subjected a victim to sexual intercourse by forcible compulsion committed a Class A felony, rape in the first degree. ORS 163.375 (1971). At the same time, a person who subjected a person to sexual contact—as opposed to sexual intercourse—by forcible compulsion committed a Class C felony, sexual abuse in the first degree. ORS 163.425 (1971). In addition, a person who subjected a person to sexual contact—again, as opposed to sexual intercourse—without the victim's consent committed a Class A misdemeanor. ORS 163.415 (1971). What was missing from the 1971 law was a prohibition against subjecting a person to sexual intercourse without the victim's consent. The effect of

the omission was that a person who subjected another to sexual intercourse without the victim's consent—but not by forcible compulsion—would have to be prosecuted for a Class A misdemeanor of nonconsensual sexual contact.

As Sandrock explained to both the Senate and House judiciary committees, SB 483 was intended to fill that gap by creating an offense of nonconsensual sexual intercourse, which could be prosecuted as a Class C felony. In the course of his testimony to the Senate committee, Sandrock was asked about the meaning of the phrase "and the victim does not consent." He replied that the "reference to 'the victim does not consent' *does not include a lack of capacity to consent*" to a sexual act. Tape Recording, Senate Committee on Judiciary, SB 483, Apr 7, 1983, Tape 85, Side B (statement of Peter Sandrock) (emphasis added). According to Sandrock, "[t]hose situations in which a [victim] lacks the capacity to consent to a sexual act are defined elsewhere in the rape code." *Id.*

Not surprisingly, defendant relies heavily on the portion of Sandrock's testimony that speaks directly to the point in contention in this case. He did say that the reference to lack of "consent" in the bill meant actual lack of consent and not incapacity to consent.

That is not all that Sandrock said, however. He also told the legislature that the subject of incapacity to consent was "defined elsewhere in the rape code." It is not clear to what Sandrock was referring. It could be that he was referring to ORS 163.315, which, as we have noted, provides that a victim under the age of 18 is incapable of consenting to a sexual act. Or it could be that he was referring to the fact that, elsewhere in the criminal code, the legislature had defined various degrees of the crime of rape according to the age of the victim. In the original criminal code revisions, for example, first-, second-, and third-degree rape were defined to include having sexual intercourse with a victim under the ages of 12, 14, and 16, respectively. ORS 163.355 (1971); ORS 163.365 (1971); ORS 163.375 (1971).

Even if the latter explanation is the more likely, we are hesitant to ascribe to the Legislative Assembly as a whole the single remark of a single nonlegislator at a committee

hearing. *See State v. Guzek*, 322 Or 245, 260, 906 P2d 272 (1995) (testimony of representative of Oregon District Attorneys Association "says little about the intent of the Oregon Legislative Assembly as a whole"). We therefore turn to other aids to statutory construction.

One relevant consideration, it seems to us, is subsequent legislation on the same subject. We are well aware that, strictly speaking, subsequent legislation is not part of the "context" of a statute. *Stull v. Hoke*, 326 Or 72, 79-80, 948 P2d 722 (1997). That is why we did not consider subsequent legislation as part of our analysis of the text and context of ORS 163.425. It is also true, however, that we have an obligation to give meaning and effect to all relevant statutes, whenever those statutes were enacted, based on the assumption that the legislature always intends its enactments to be construed together as a workable whole. *City of Eugene v. Nalven*, 152 Or App 720, 725-26, 955 P2d 263, *rev den*, 327 Or 431 (1998).[1]

In 1991, the legislature enacted ORS 163.345(1), which provides:

> "In any prosecution under * * * [ORS] 163.425 * * * in which the victim's lack of consent was due solely to incapacity to consent by reason of being less than a specified age, it is a defense that the actor was less than three years older than the victim at the time of the alleged offense."

The statute expressly applies to what is now the crime of sexual abuse in the second degree; it specifically refers to ORS 163.425. It also expressly states that a victim's lack of consent may be established by "incapacity to consent by reason of being less than a specified age." As we have noted, however, ORS 163.425 says nothing about establishing lack of consent by evidence of incapacity in any form. It says only that there must be proof that "the victim does not consent."

---

[1] Thus, for example, rules of "implied repeal" and "implied amendment" have been developed to reconcile otherwise irreconcilable conflicts between newer and older enactments. *E.g., State ex rel Huddleston v. Sawyer*, 324 Or 597, 604-05, 932 P2d 1145, *cert den*, 522 US 994 (1997) (implied repeal); *Balzer Mch. v. Klineline Sand & Grav.*, 271 Or 596, 601, 533 P2d 321 (1975) (implied amendment); *State v. Thompson-Seed*, 162 Or App 483, 491, 986 P2d 732 (1999) (implied repeal); *State v. Lawler*, 144 Or App 456, 462-63, 927 P2d 99 (1996), *rev den*, 326 Or 390 (1998) (implied amendment).

Logically, there are two possible readings of ORS 163.345. First, the legislature intended that the requirement that "the victim does not consent" could be satisfied by evidence that the victim was incapable of consenting "by reason of being less than a specified age." Second, the legislature simply made a mistake in stating that the affirmative defense described in that statute applies to ORS 163.425.

As between the two readings, we are obliged to favor the former. To begin with, we do not lightly assume that the legislature did not know what it was doing. *Housing Authority of Portland v. Comstock*, 163 Or App 463, 467, 988 P2d 407, *rev den*, 330 Or 71 (1999). Moreover, the former reading of the statute is consistent with ORS 163.315 and its legislative history, as well as with our decision in *Landino* and its reasoning.

Even assuming that the legislature made an inadvertent mistake in including ORS 163.425, however, we cannot ignore the fact that the "mistake" was enacted into law. Mistakenly enacted or not, it remains the law, and we are not at liberty to alter it. As the Supreme Court explained in *Monaco v. U.S. Fidelity & Guar.*, 275 Or 183, 188, 550 P2d 422 (1976), "[t]his court cannot correct clear and unambiguous language for the legislature to serve what the court feels was, or should have been, the legislature's intent." *See also* ORS 174.010; *Young*, 161 Or App at 38.

If ORS 163.345 means what it appears unequivocally to say, then defendant's proposed construction of ORS 163.425 becomes untenable. ORS 163.345 clearly contemplates that lack of consent under ORS 163.425 may be established by evidence of incapacity because of the age of the victim. Only by refusing to give effect to ORS 163.345 could we conclude that sexual abuse in the second degree may be established only by proof of lack of actual consent.

In the final analysis, we acknowledge that this statute cannot be interpreted merely by the mechanical application of well-known principles of statutory construction. As we have endeavored to demonstrate, depending on which rules are given emphasis, different readings of the relevant statutes may be justified. And the law neglects to supply a rule for determining which rules should prevail. Ultimately, our

interpretation of the statute is a judgment call based on our best estimation of what the legislature intended. After carefully considering the text and context of ORS 163.425, as well as its legislative history and the history of related statutes, and based on prior construction of those related statutes and subsequent legislative enactments, our best judgment is that the legislature intended the phrase "the victim does not consent" to apply either to actual lack of consent or incapacity to consent because the victim was under the age of 18.

We acknowledge—as we did in *Landino*—that our construction of the statute renders portions of other statutes superfluous. Particularly, when ORS 163.415 defines sexual abuse in the third degree as sexual contact with a victim who either does not consent or is incapable of consenting by reason of being under 18 years of age, the reference to incapacity by reason of age is indeed redundant, incapacity because of age already having been established as a basis for concluding the victim "does not consent" under ORS 163.315.

We hasten to note that defendant's proposed construction would pose even more troubling consequences. It would mean that other statutes are not merely superfluous, but wrong. To hold that "the victim does not consent" means only a lack of actual consent would create significant tension with the provision in ORS 163.315 that establishes that victims under 18 cannot consent. More important, it would require us to declare that ORS 163.345 simply does not mean what it says and cannot be given the effect that it plainly describes. In our judgment, concluding that the legislature merely said more than it needed to is far less offensive to legislative prerogative than holding that the legislature did not mean what it said. *See S-W Floor Cover Shop v. Natl. Council on Comp Ins.*, 318 Or 614, 630-31, 872 P2d 1 (1994) (when faced with the choice of an interpretation that renders other enactments redundant and an interpretation that requires the court to omit what the legislature has inserted into a statute, court chooses the former).

Defendant advances other arguments and assignments of error, all of which we reject without discussion.

Affirmed.